IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **BOHANNON R. MILLER,** | Case Number 1:13cv663 |
| Petitioner, | Judge Donald C. Nugent |
| v. | Magistrate Judge James R. Knepp, II |
| **BENNIE KELLY,** Warden**,** | |
| Respondent. | REPORT AND RECOMENDATION |

### INTRODUCTION

*Pro se* Petitioner Bohannon R. Miller, a prisoner in state custody, filed a petition seeking a writ of habeas corpus under 28 U.S.C. § 2254 ("Petition"). (Doc. 1). Respondent Warden Bennie Kelly filed a Return of Writ (Doc. 7) with attached exhibits, and Petitioner filed a Reply (Doc. 10).

The district court has jurisdiction over the Petition under § 2254(a). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). (Non-document entry dated May 15, 2013). For the reasons discussed below, the undersigned recommends the Petition be dismissed. Further, Petitioner's requests for appointment of counsel and an evidentiary hearing are denied.

### FACTUAL BACKGROUND

For purposes of habeas corpus review of state court decisions, findings of fact made by a state court are presumed correct and can only be contravened if the habeas petitioner shows, by clear and convincing evidence, that the state court's factual findings were erroneous. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524,

530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. Ohio's Ninth District Court of Appeals set forth the following findings of fact:

> On January 13, 2010, both Taylor and Miller [(Petitioner)] were involved in an automobile collision with Eric Echols and his two passengers. Echols fled the scene after the accident and brought the matter to the attention of the Lorain Police Department. The matter ultimately was reviewed by the police department's gang task force, as both Taylor and Miller were believed to be gang members affiliated with the Southside gang in Lorain. The police received information that Taylor stole the car that was involved in the collision with Echols and that the collision may have been an intentional, retaliatory attack that stemmed from Taylor and Miller's Southside gang membership and Echols' affiliation with the Westside.
>
> * * *
>
> The State's theory was that Taylor and Miller assaulted Echols on January 13, 2010, in retaliation for one of the murders that occurred. On June 22, 2009, Chris Hill, a suspected Southside gang member, was killed. Later that same day, Marquis McCall, an individual affiliated with the Westside gang, was killed. The State informed the jury that both Taylor and Miller were related to Hill and that one of the passengers in Echols' car on January 13, 2010, Romando Smith, was related to McCall. Additionally, Echols himself had been friends with McCall. The State later introduced evidence at the trial that after the collision with Echols occurred and the police became involved, Taylor sent a text message stating "RIP Money Bags." The prosecutor explained that "RIP" meant rest in peace and that "Money Bags" was Hill's pseudonym
>
> * * *
>
> Detective Curry testified as an expert to provide a historical perspective on gangs in general and gangs specific to Lorain County. He possessed extensive knowledge about the different gangs in Lorain and testified about gang culture. In particular, he was able to testify about the connections between gangs, violence, drugs, graffiti, tattoos, and the music and clothing industries. Detective Curry was assigned to gang-related duties from 1994 to approximately 2002, when he was assigned to other activities. He testified, however, that he still continuously received information about gang-related activity while assigned to his other duties due to his work with confidential informants, gang members, and other individuals from "the street." Detective Taylor testified that one particular Southside gang from Lorain was the Hardbodies gang and that he saw Hardbody tattoos on both Taylor and Miller.

> \* \* \*
>
> Officer Gidich testified that both Taylor and Miller are from the South side of town and that he referred the January 13, 2010 collision in which Taylor, Miller, and Echols were involved to the detective bureau because he believed it was gang-related. Detective Sivert also testified that Taylor and Miller were from the South side of Lorain and both were detained on April 1, 2007, along with Corey Patfield Briggs, Timothy Merritt, Antwain Blake, and Billy Gilbert, in connection with an assault that occurred at a nightclub there. Taylor and Miller both were convicted of aggravated rioting as a result of the incident. Detective Sivert stated that all of the other individuals detained for the April 2007 incident along with Taylor and Miller were from the South side.
>
> Through Detective Sivert and Lieutenant Super II, the State also introduced numerous photographs of the tattoos Taylor and Miller had on their bodies. Detective Sivert testified that Taylor had a tattoo of "Hard" on his right arm and "Body" on his left, as well as "GMB" on his stomach. He explained that Hardbodies is a set of the Southside gang as is "GMB," which stands for "Get Money Boys." Detective Sivert also testified that Miller had tattoos depicting "Hardbodies" and "Get Money Boys" across his chest and stomach. Further, he testified that Miller had a "Campito" tattoo on his hand and that Campito "is a gang associated with the South Lorain gang." Detective Sivert stated that Taylor, Miller, Blake, and Gilbert all had Hardbodies tattoos.
>
> Other photographs the State introduced depict both Taylor and Miller either displaying gang signs themselves or standing alongside other individuals displaying gang signs. Lieutenant Super II testified that several of the other individuals in the photographs are suspected gang members. Moreover, Officer Findish was able to identify the gang signs being portrayed in the photographs and testified that, based on his experience, both Taylor and Miller's behavior was consistent with that of gang membership.
>
> \* \* \*
>
> In addition to his aggravated rioting conviction for the April 2007 incident, Miller also was convicted of having weapons under disability and carrying a concealed weapon in March 2008. The trial court admitted certified copies of Miller's convictions, all of which were felonies. *See R.C. 2923.4l(B)(2)*(setting forth, among other factors, the commission of two or more felony convictions as one scenario under which a defendant may be said to have engaged in a "pattern of criminal gang activity").

(Ex. 12, Doc. 7-1, at 91-134).

3

**PROCEDURAL BACKGROUND**

The relevant procedural history is accurately summarized in Respondent's brief and is incorporated herein as follows, with only minor changes. (Doc. 7).

*State Conviction*

The January 2010 term of the Lorain County Grand Jury issued an indictment charging Petitioner with one count of felonious assault (Ohio Rev. Code § 2903.1 l(A)(2)) with a gang specification; and one count of participating in a criminal gang (Rev. Code § 2923.42(A)). (Ex. 1, Doc. 7-1, at 1-2). Petitioner entered a plea of not guilty to the indictment and the case was set for trial. (Ex. 2, Doc. 7-1, at 3).

Prior to trial, the court granted the state's oral motion to consolidate Petitioner and Taylor's cases for trial. (Ex. 3, Doc. 7-1, at 4). The court also denied Petitioner's motion to dismiss the indictment and motion to dismiss for lack of a speedy trial. (*Id.*).

The Grand Jury issued another amended indictment charging Petitioner with Participating in a criminal gang (Rev. Code § 2923.42(A)). This indictment gave a recitation of Petitioner's previous criminal cases as an adult and juvenile. (Ex. 5, Doc. 7-1, at 6-7).

A jury trial commenced and on September 9, 2010, Petitioner was found not guilty of complicity to felonious assault and its gang specification, and he was found guilty of participating in a criminal gang. (Ex. 6, Doc. 7-1, at 8-11). Petitioner made a Rule 29 Motion for Acquittal after the verdict. Petitioner argued that the not guilty verdict for complicity to felonious assault was inconsistent with the guilty verdict for participating in a criminal gang. The court denied the motion. (Ex. 7, Doc. 7-1, at 12-16).

On October 13, 2010, the trial court sentenced Petitioner to a term of eight years imprisonment. (Ex. 8, Doc. 7-1, at 17). The trial court docket is at Exhibit 17. (Doc. 7-1, at 213).

*Direct Appeal*

On November 9, 2010 Petitioner through his attorney filed an appeal of his conviction and sentence with the Ninth District Court of Appeals, Lorain County under Case No. CA 10CA009915. (Ex. 9, Doc. 7-1, at 20). Petitioner filed his brief on September 27, 2011. He raised the following assignments of error:

> 1. The jury lost its way in finding appellant guilty of participating in a criminal gang as the evidence presented was insufficient to find appellant guilty beyond a reasonable doubt.
>
> 2. The trial court erred in trying appellant for felonious assault and participating in a criminal gang in the same trial.
>
> 3. The trial court erred in allowing the State to try appellant and his codefendant in the same trial.
>
> 4. The trial court erred in allowing evidence of other acts to be introduced at appellant's trial as it was more prejudicial than probative.
>
> 5. The trial court erred in allowing evidence to be presented at trial of a previously dismissed case in which appellant was accused of murder, as it was extremely prejudicial.
>
> 6. The trial court erred in allowing police officers to testify as gang experts without first being properly qualified as experts.
>
> 7. The trial court erred in allowing police officers to conclusively state that appellant belonged to a gang rather than allow the jury to draw its own conclusions.
>
> 8. The trial court erred by not declaring a mistrial, when an associate of codefendant Avery Taylor entered the jury room and intimidated the jury allowed for the charge of participating in a criminal gang.
>
> 10. The cumulative effect of the errors committed by the trial court denied appellant his right to a fair trial.

(Ex. 10, Doc. 7-1, at 26). The state filed a brief in response. (Ex. 11, Doc. 7-1, at 56). On March 26, 2012, the court of appeals issued a decision overruling Petitioner's assignments of error and

affirming the conviction in the trial court. (Ex. 12, Doc. 7-1, at 91-139). The court of appeals' docket is at Exhibit 18. (Doc. 7-1, at 219).

On May 9, 2012, Petitioner, through counsel filed a notice of appeal with the Ohio Supreme Court under Case No. 2012-0806. (Ex. 13, Doc. 7-1, at 140). In the memorandum in support of jurisdiction, Petitioner set forth the as the sole proposition of law:

> I. When a criminal defendant is acquitted of engaging in any predicate criminal conduct, the evidence is insufficient to sustain a conviction for participating in a criminal gang in violation of R.C. 2923.42(A).

(Ex. 14, Doc. 7-1, at 143). The state filed a memorandum opposing jurisdiction. (Ex. 15, Doc. 7-1, at 202). On July 25, 2012, the Ohio Supreme Court denied leave to appeal and dismissed the case because it did not involve any substantial constitutional question. (Ex. 16, Doc. 7-1, at 212). The Ohio Supreme Court docket is at Exhibit 19. (Doc. 7-1, at 223).

## FEDERAL HABEAS CORPUS

Petitioner filed a federal petition for writ of habeas corpus under 28 U.S.C. § 2254 in this Court. He represented he provided it to the prison for mailing on March 15, 2013. (Doc. 1, at 4). Petitioner alleged the following ground in support of the Petition:

> GROUND ONE: A defendant has a constitutional right to a fair trial. Fifth and Fourteenth Amendments to the United States Constitution; *Tumey v. Ohio* (1927), 273 U.S. 510, 523, 47 S.Ct. 437, 71 L.Ed. 749. Before a state can obtain a conviction, it must prove beyond a reasonable doubt every element of the offense. *Sullivan v. Louisiana* (1993), 508 U.S. 275, 277-78, 113 S.Ct. 2078, 124 L.Ed. 2d 182; *Jackson v. Virginia* (1979), 443 U.S. 307, 316, 99 S.Ct. 2781, 61 L.Ed 2d 560; *In re Windship* (1970), 397 U.S. 358, 361-64, 90 s.ct.1068, 25 L.Ed. 2d 368. A conviction based upon insufficient evidence must be overturned. *Jackson* at 315-18. See, also, *State v .Thompkins* (1997), 78 Ohio St. 3d 380 1 387, 678 N.E. 2d 541; *State v. Robinson* (1955), 162 Ohio St.486, 124 N.E. 2d 148; *Tibbs v. Florida* (1982), 457 U.S. U.S. 31, 102 S.Ct.221, 72 L.Ed.652. The standard of review is whether, "after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson* at 319.

(Doc. 1, at 6). Petitioner also requested an evidentiary hearing and the appointment of counsel in the Petition. (Doc. 1, at 11-13).

### STANDARD OF REVIEW

When the basis for a federal habeas claim has been previously adjudicated by the state courts, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides the writ shall not issue unless the state decision "was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A federal court may grant habeas relief if the state court arrives at a decision opposite to that reached by the Supreme Court of the United States on a question of law, or if the state court decides a case differently than did the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

The appropriate measure of whether a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409–11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011).

State trial court factual determinations are presumed correct and a petitioner must present clear and convincing evidence to the contrary in order to overcome the correctness presumption. 28 U.S.C. § 2254(e). "It is a clearly established rule that errors in the application of state law, especially rulings regarding the admission or exclusion of evidence, are usually not to be

7

questioned in federal habeas corpus proceedings." *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988). A state court decision on state law grounds, including a state court's evidentiary ruling, can only rise to the level required for habeas relief if the determination is so egregious and fundamentally unfair that it deprives a defendant of due process. *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2010).

A federal habeas court's province is not to reexamine state court determinations on state law questions and when reviewing a claim of evidentiary error, a habeas court must defer to the state court's interpretation of its own rules of evidence and procedure. *Estelle v. McGuire*, 502 U.S. 62 (1991); *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005).

## ANALYSIS

### *Sufficiency of the Evidence*

Due process requires conviction only on proof of guilt beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 309–16 (1979) (citing *In re Winship*, 397 U.S. 358, 362-63 (l970)). The standard for sufficiency of the evidence is: "whether after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 318-19 (emphasis in original). "[T]he *Jackson* inquiry does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993) (emphasis in original).

In examining a sufficiency claim, a habeas court can only look to "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 318. Even if the federal habeas court would not have convicted the petitioner, "it must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after

8

resolving all disputes in favor of the prosecution", and even if a rational trier of fact could not have found a petitioner guilty, the federal habeas court still must "defer to the state appellate court's sufficiency determination so long as it is not unreasonable." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009) (citing 28 U.S.C. § 2254(d)(2)).

Here, Petitioner alleges his due process rights were violated because the state failed to present sufficient evidence of the "criminal conduct" element of participation in a criminal gang. (Doc. 1, at 7). Petitioner does not challenge the sufficiency of the evidence with regard to the first two elements of participation in a criminal gang, i.e. someone who actively participates in a criminal gang with the knowledge that the criminal gang engages in or has engaged in a pattern of criminal gang activity. Ohio Rev. Code § 2923.42(A); (Doc. 1, at 7). Rather, Petitioner relies on the misplaced notion that he could not have committed criminal conduct because he was acquitted of felony assault.

This argument misses the mark because the "criminal conduct" element of participating in a criminal gang can be met with past or present criminal conduct, including a history of two or more felony convictions. Rev. Code § 2923.41(B)(2). A careful review of the relevant statutory sections makes this point clear.

Indeed, Rev. Code § 2923.42(A) prohibits participation in a criminal gang:

> No person who actively participates in a criminal gang, with knowledge that the criminal gang engages in or has engaged in a pattern of criminal activity, shall purposely promote, further, or assist any criminal conduct, as defined in division (C) of section 2923.41 of the Revised Code, or shall purposely commit or engage in any act that constitutes criminal conduct, *as defined in division (C) of section 2923.41 of the Revised Code*.

(emphasis added). The highlighted portion of the statue references Rev. Code § 2923.41(C), which defines "criminal conduct" as:

9

> [T]he commission of, an attempt to commit, a conspiracy to commit, complicity in the commission of, or solicitation, coercion, or intimidation of another to commit, attempt to commit, conspire to commit, or be in complicity in the commission *of an offense listed in division (B)(l)(a), (b), or (c) of this section*

(emphasis added). In turn, the highlighted portion of the criminal conduct law directs to Rev. Code § 2923.41(B)(1), which establishes the criteria for a "pattern of criminal gang activity":

> There is a "pattern of criminal gang activity" if all of the following apply with respect to the offenses that are listed in division (B)(1)(a), (b), or (c) of this section and that persons in the criminal gang committed, attempted to commit, conspired to commit, were in complicity in committing, or solicited, coerced, or intimidated another to commit, attempt to commit, conspire to commit, or be in complicity in committing:
>
> (a) At least one of the two or more offenses is a felony.
>
> (b) At least one of those two or more offenses occurs on or after January 1, 1999.
>
> (c) The last of those two or more offenses occurs within five years after at least one of those offenses.
>
> (d) The two or more offenses are committed on separate occasions or by two or more persons.

Thus, contrary to Petitioner's argument, the fact that he was not convicted of felony assault does not absolve him of conviction for participating in a criminal gang based on the plain letter of the law. *See, State v. Coe*, 2010-Ohio-1840, ¶64 (Ohio Ct. App.) (affirming conviction for participation in a criminal gang where there was evidence of gang membership, admission to selling marijuana, and previous felony convictions); *State v. Swain*, 2013-Ohio-5900 (Ohio Ct. App.) (sufficient evidence of engaging in a pattern of criminal gang activity because there was evidence defendant was affiliated with a gang, that members of the gang, including defendant, had been convicted of violent felonies in the past, and other gang members and defendant were identified as being at the crime scene); *State v. Hairston*, 200-Ohio-891 (Ohio Ct. App.) (state

10

may introduce evidence of defendant's past felony convictions in an attempt to establish a "pattern of criminal gang activity").

Moreover, it was not objectively unreasonable for the Ninth District Court of Appeals to conclude a rational trier of fact viewing the evidence in the light most favorable to the prosecution could have found beyond a reasonable doubt that Petitioner committed "criminal conduct" as set forth by Rev. Code § 2923.41(C).

When Petitioner challenged the sufficiency of the conviction for participating in a criminal gang on direct appeal, Ohio's Ninth District Court of Appeals determined his claim lacked merit and opined:

> In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. *State v. Jenks,* 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991). An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Id.* at paragraph two of the syllabus; see also *State v. Thompkins,* 78 Ohio St.3d 380, 386, 1997 Ohio 52, 678 N.E.2d 541 (1997). "In essence, sufficiency is a test of adequacy." *Thompkins,* 78 Ohio St.3d at 386.
>
> * * *
>
> *Active Participation*
> "[T]here is no criminal liability under [R.C] 2923.42(A) unless the defendant actively participated in a gang, knew the gang engaged in criminal gang activity, and promoted, furthered, or assisted criminal conduct, or engaged in criminal conduct himself." *State v. Hairston,* 9th Dist. Nos. 23663 & 23680, 2008 Ohio 891, 15. "[T]he common and ordinary meaning of 'actively participates in a criminal gang' is involvement with a criminal gang that is more than nominal or passive." *State v. Stallings,* 150 Ohio App.3d 5, 2002 Ohio 5942, 16, 778 N.E.2d 1110 (9th Dist.). This Court has previously determined that sufficient evidence of active participation existed where a defendant's residence had a number of graffiti markings denoting the gang at issue and the defendant previously had been

arrested at a drug house at the same time as a known gang member. *Hairston* at 16-17.

Officer Gidich testified that both Taylor and Miller are from the South side of town and that he referred the January 13, 2010 collision in which Taylor, Miller, and Echols were involved to the detective bureau because he believed it was gang-related. Detective Sivert also testified that Taylor and Miller were from the South side of Lorain and both were detained on April 1, 2007, along with Corey Patfield Briggs, Timothy Merritt, Antwain Blake, and Billy Gilbert, in connection with an assault that occurred at a nightclub there. Taylor and Miller both were convicted of aggravated rioting as a result of the incident. Detective Sivert stated that all of the other individuals detained for the April 2007 incident along with Taylor and Miller were from the South side.

Through Detective Sivert and Lieutenant Super II, the State also introduced numerous photographs of the tattoos Taylor and Miller had on their bodies. Detective Sivert testified that Taylor had a tattoo of "Hard" on his right arm and "Body" on his left, as well as "GMB" on his stomach. He explained that Hardbodies is a set of the Southside gang as is "GMB," which stands for "Get Money Boys." Detective Sivert also testified that Miller had tattoos depicting "Hardbodies" and "Get Money Boys" across his chest and stomach. Further, he testified that Miller had a "Campito" tattoo on his hand and that "Campito" is a gang associated with the South Lorain gang. Detective Sivert stated that Taylor, Miller, Blake, and Gilbert all had Hardbodies tattoos.

Other photographs the State introduced depict both Taylor and Miller either displaying gang signs themselves or standing alongside other individuals displaying gang signs. Lieutenant Super II testified that several of the other individuals in the photographs are suspected gang members. Moreover, Officer Findish was able to identify the gang signs being portrayed in the photographs and testified that, based on his experience, both Taylor and Miller's behavior was consistent with that of gang membership.

Once again viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found that the State set forth sufficient evidence to show that both Taylor and Miller actively participated in a criminal gang. See R.C. 2923.42(A). Both had numerous gang-related tattoos, were photographed either displaying gang signs or alongside other individuals displaying gang signs, and had prior convictions after they were arrested along with several other suspected gang members. See *Hairston,* 2008 Ohio 891, at 16-17 (concluding that the State presented sufficient evidence of active participation in a gang where the defendant had graffiti markings of the gang in his home and was previously arrested at the same time of a known gang member). See also *McCraney,* 2010 Ohio 6128, at 27-30 (agreeing that the State set forth sufficient evidence of active participation, in part, because the appellant had MySpace webpage that depicted numerous gang-related photographs). Taylor and Miller's

12

argument that the State failed to set forth sufficient evidence of active participation lacks merit.

*Pattern of Criminal Activity*

Lastly, Miller argues that his conviction is based on insufficient evidence because the jury only could convict him of participating in a criminal gang if it first convicted him of felonious assault. His entire argument consists of the following two sentences:

> More importantly, the jury found Miller not guilty of the felonious assault charge and thus he did not commit conduct encouraged by the gang. Since he was not found guilty of the felonious assault, he cannot be found guilty of participating in a criminal gang charge.

He does not cite any authority in support of his argument or provide any additional rationale for his conclusion. See App.R. 16(A)(7).

In addition to his aggravated rioting conviction for the April 2007 incident, Miller also was convicted of having weapons under disability and carrying a concealed weapon in March 2008. The trial court admitted certified copies of Miller's convictions, all of which were felonies. See R.C. 2923.41(8)(2) (setting forth, among other factors, the commission of two or more felony convictions as one scenario under which a defendant may be said to have engaged in a "pattern of criminal gang activity"). Moreover, although the jury did not find Miller guilty of felonious assault, that fact is not necessarily inconsistent with the jury having found Miller guilty of participating in a criminal gang. The court specifically instructed the jury that the counts in the indictment were separate and distinct, and that the juror's findings on one count should not influence another count. It further instructed the jury that the definition of a "pattern of corrupt gang activity" encompasses the commission of any felony, including felonies which a person "committed, attempted to commit, conspired to commit, w[as] in complicity in committing, or solicited, coerced, or intimidated another to commit, attempt to commit, conspire to commit, or be in complicity in committing." R.C. 2923.41(8)(2). What the court did not instruct was that the jury had to find Miller guilty of felonious assault before it could find him guilty of participating in a criminal gang. Miller never sought such an instruction, and he fails to engage in any analysis to explain why the jury could not have convicted him of participating in a criminal gang even without finding him guilty of felonious assault. See App.R. 16(A)(7); *Cardone,* 1998 Ohio App. LEXIS 2028, 1998 WL 224934, at *8 ("If an argument exists that can support [an] assignment of error, it is not this [C]ourt's duty to root it out").

Taylor and Miller's arguments that the State failed to present sufficient evidence here lack merit. Accordingly, Taylor's eleventh assignment of error and Miller's first assignment of error are overruled.

13

(Ex. 12, Doc. 7-1, at 127-134).

As more fully stated above, the Ninth District reasonably found sufficient evidence to prove active participation in a gang, including officer testimony that the car accident was gang-related and that Petitioner and the driver were members of the Southside gang, evidence of Petitioner's and Taylor's gang-specific tattoos and photographs, Taylor's felony conviction, and Petitioner's three former felony convictions. (Ex. 12, Doc. 7-1, at 131-33).

Regarding a pattern of criminal activity, the Ninth District found the trial court did not err by considering Petitioner's previous felony convictions for rioting, having weapons under a disability, and carrying a concealed weapon during the statutory time period and in connection with gang activity. (Ex. 12, Doc. 7-1, at 133-34). Moreover, the Ninth District reasoned that because Petitioner provided no rule of law to support his claim that the jury could not convict him of participation in a criminal gang without first convicting him of felony assault, it was under no duty to "root out" an argument on Petitioner's behalf. *Id*.

Accordingly, Petitioner has not established he was denied a fundamentally fair trial or that his federal due process rights were violated. Nor has he shown the state courts unreasonably applied the facts or its determinations were contrary to clearly established federal law.

*Rule 11*

In his Reply, Petitioner relies on Rule 11 of the Federal Rules of Civil Procedure to argue he is entitled to respond to arguments which are unexhausted because Respondent "opened the door" in his return of writ, and moves to strike the Return of Writ because "respondent did not support his return of writ with attached exhibits". (Doc. 10, at 6-8).

Both arguments are without merit. Indeed, Petitioner does not present any unexhausted arguments for consideration. Regardless, it is well settled that any argument not first raised in the

14

Petition is waived. *Murphy v. Ohio*, 551 F.3d 485, 485 n.4 (6th Cir. 2009). In addition, Petitioner has not identified any evidence which should have been but was not included in the record. Moreover, Respondent filed a nearly three-thousand page record, which appears to be complete. (Doc. 7). In short, these arguments should be denied.

*Request for Evidentiary Hearing*

Petitioner requests an evidentiary hearing, arguing he is "legally deserving" because the act of "standing idely near a wrecked automobile until the police arrived, is the act of an innocent man". (Doc. 7-1, at 12).

But, an evidentiary hearing is not warranted if, as here, it would be futile because the existing record is complete and no fact that could have been developed would result in the granting of the writ. *Martin v. Hall*, 2012 U.S. Dist. LEXIS 22637, at *6, 2012 WL 601912 (N.D. Ohio); 28 U.S.C. § 2254(e)(2). Having reviewed the Petition and Reply, the Court finds no "new rule of constitutional law" or facts "that could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2)(A)-(B). For these reasons, the undersigned denies Petitioner's request for an evidentiary hearing.

*Request for Appointment of Counsel*

Next, Petitioner requests the appointment of counsel, because he is a layman, lacking "all and any" legal knowledge or ability. Doc. 7-1, at 13).

There is no constitutional right to the appointment of counsel in civil cases, and the court has broad discretion in determining whether counsel should be appointed. *Childs v. Pellegrin*, 822 F.2d 1382, 1384 (6th Cir.1987) ("[A]ppointment of counsel in a civil case is ... a matter within the discretion of the court. It is a privilege and not a right.") (internal quotation omitted). The Criminal Justice Act authorizes federal magistrate judges to appoint counsel to a petitioner

15

who brings a habeas petition under Sections 2241, 2254, or 2255. 18 U.S.C. § 3006A(a)(2)(B). Such an appointment is made only when "the interests of justice so require" and the person is financially eligible. *Id.* A district court does not abuse its discretion by declining to appoint counsel where the issues in the case are straightforward and capable of resolution on the record or the Petitioner has a good understanding of the issues and the ability to present forcefully and coherently his contentions. *See Mira v. Marshall*, 806 F.2d 636, 638 (6th Cir. 1986); *Swazo v. Shillinger*, 23 F.3d 332, 333 (10th Cir. 1994); *Reese v. Fulcomer*, 946 F.2d 247, 264 (3d Cir. 1991).

Here, Petitioner's claims are neither novel nor complex, and do not involve new or undiscovered facts. Moreover, Petitioner filed a coherent Petition and Reply, complete with legal support. (Docs. 1; 10). Therefore, the undersigned denies Petitioner's request for appointment of counsel.

## CONCLUSION AND RECOMMENDATION

Following review, the undersigned recommends the Court find Petitioner's claim lacks merit and his Petition be dismissed. Further, Petitioner's requests for an evidentiary hearing and the appointment of counsel are denied.

s/James R. Knepp II<br>United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).