IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| BOHANNON R. MILLER, ) | CASE NO. 1:13 CV 663 |
| ) | |
| Petitioner, ) | JUDGE DONALD C. NUGENT |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION** |
| BENNIE KELLY, Warden, ) | |
| ) | |
| ) | |
| Respondent. ) | |

This matter is before the Court upon the Report and Recommendation of Magistrate Judge James R. Knepp, II. (Docket #12.) The Magistrate Judge recommends that the Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 by Petitioner, Bohannon R. Miller be dismissed. (Docket # 1.)

**Facts and Procedural History**

As set forth by the Magistrate Judge, the factual and procedural history of this case is as follows:

I. Summary of Facts

Ohio's Ninth District Court of Appeals set forth the following findings of fact:

On January 13, 2010, both Taylor and Miller [(Petitioner)] were involved in an automobile collision with Eric Echols and his two passengers. Echols fled the scene after the accident and brought the matter to the attention of the Lorain Police Department. The matter ultimately was reviewed by the police

department's gang task force, as both Taylor and Miller were believed to be gang members affiliated with the Southside gang in Lorain. The police received information that Taylor stole the car that was involved in the collision with Echols and that the collision may have been an intentional, retaliatory attack that stemmed from Taylor and Miller's Southside gang membership and Echols' affiliation with the Westside.

\* \* \*

The State's theory was that Taylor and Miller assaulted Echols on January 13, 2010, in retaliation for one of the murders that occurred. On June 22, 2009, Chris Hill, a suspected Southside gang member, was killed. Later that same day, Marquis McCall, an individual affiliated with the Westside gang, was killed. The State informed the jury that both Taylor and Miller were related to Hill and that one of the passengers in Echols' car on January 13, 2010, Romando Smith, was related to McCall. Additionally, Echols himself had been friends with McCall. The State later introduced evidence at the trial that after the collision with Echols occurred and the police became involved, Taylor sent a text message stating "RIP Money Bags." The prosecutor explained that "RIP" meant rest in peace and that "Money Bags" was Hill's pseudonym

\* \* \*

Detective Curry testified as an expert to provide a historical perspective on gangs in general and gangs specific to Lorain County. He possessed extensive knowledge about the different gangs in Lorain and testified about gang culture. In particular, he was able to testify about the connections between gangs, violence, drugs, graffiti, tattoos, and the music and clothing industries. Detective Curry was assigned to gang-related duties from 1994 to approximately 2002, when he was assigned to other activities. He testified, however, that he still continuously received information about gang-related activity while assigned to his other duties due to his work with confidential informants, gang members, and other individuals from "the street." Detective Taylor testified that one particular Southside gang from Lorain was the Hardbodies gang and that he saw Hardbody tattoos on both Taylor and Miller

\* \* \*

Officer Gidich testified that both Taylor and Miller are from the South side of town and that he referred the January 13, 2010 collision in which Taylor, Miller, and Echols were involved to the detective bureau because he believed it was gang-related. Detective Sivert also testified that Taylor and Miller were from the South side of Lorain and both were detained on April 1, 2007, along with Corey Patfield Briggs, Timothy Merritt, Antwain Blake, and Billy Gilbert, in connection with an assault that occurred at a nightclub there. Taylor and Miller both were

convicted of aggravated rioting as a result of the incident. Detective Sivert stated that all of the other individuals detained for the April 2007 incident along with Taylor and Miller were from the South side.

Through Detective Sivert and Lieutenant Super II, the State also introduced numerous photographs of the tattoos Taylor and Miller had on their bodies. Detective Sivert testified that Taylor had a tattoo of "Hard" on his right arm and "Body" on his left, as well as "GMB" on his stomach. He explained that Hardbodies is a set of the Southside gang as is "GMB," which stands for "Get Money Boys." Detective Sivert also testified that Miller had tattoos depicting "Hardbodies" and "Get Money Boys" across his chest and stomach. Further, he testified that Miller had a "Campito" tattoo on his hand and that Campito "is a gang associated with the South Lorain gang." Detective Sivert stated that Taylor, Miller, Blake, and Gilbert all had Hardbodies tattoos.

Other photographs the State introduced depict both Taylor and Miller either displaying gang signs themselves or standing alongside other individuals displaying gang signs. Lieutenant Super II testified that several of the other individuals in the photographs are suspected gang members. Moreover, Officer Findish was able to identify the gang signs being portrayed in the photographs and testified that, based on his experience, both Taylor and Miller's behavior was consistent with that of gang membership.

* * *

In addition to his aggravated rioting conviction for the April 2007 incident, Miller also was convicted of having weapons under disability and carrying a concealed weapon in March 2008. The trial court admitted certified copies of Miller's convictions, all of which were felonies. *See R.C. 2923.41(B)(2)*(setting forth, among other factors, the commission of two or more felony convictions as one scenario under which a defendant may be said to have engaged in a "pattern of criminal gang activity").

(Ex. 12, Doc. 7-2, at 91-134).

## II. Procedural History

A jury trial commenced and on September 9, 2010, Petitioner was found not guilty of complicity to felonious assault and its gang specification, and he was found guilty of participating in a criminal gang. (Ex. 6, Doc. 7-1, at 8-11). Petitioner made a Rule 29 Motion for Acquittal after the verdict. Petitioner argued that the not guilty verdict for complicity to felonious assault was inconsistent with the guilty verdict for participating in a criminal gang. The court denied the motion. The trial court sentenced Petitioner to a term of eight years imprisonment on October 13, 2010. (Ex. 8, Doc. 7-1, at 12-16).

Petitioner filed a timely notice of appeal in the Ninth District Court of Appeals, Lorain County under Case No. CA 10CA009915. (Ex. 9, Doc. 7-1, at 20). Petitioner raised the following assignments of error:

-3-

> 1. The jury lost its way in finding appellant guilty of participating in a criminal gang as the evidence presented was insufficient to find appellant guilty beyond a reasonable doubt.
>
> 2. The trial court erred in trying appellant for felonious assault and participating in a criminal gang in the same trial.
>
> 3. The trial court erred in allowing the State to try appellant and his codefendant in the same trial.
>
> 4. The trial court erred in allowing evidence of other acts to be introduced at appellant's trial as it was more prejudicial than probative.
>
> 5. The trial court erred in allowing evidence to be presented at trial of a previously dismissed case in which appellant was accused of murder, as it was extremely prejudicial.
>
> 6. The trial court erred in allowing police officers to testify as gang experts without first being properly qualified as experts.
>
> 7. The trial court erred in allowing police officers to conclusively state that appellant belonged to a gang rather than allow the jury to draw its own conclusions.
>
> 8. The trial court erred by not declaring a mistrial, when an associate of codefendant Avery Taylor entered the jury room and intimidated the jury allowed for the charge of participating in a criminal gang.
>
> 10. The cumulative effect of the errors committed by the trial court denied appellant his right to a fair trial.

(Ex. 10, Doc. 7-1, at 26).

On March 26, 2012, the court of appeals issued a decision overruling the assignments of error and affirming the conviction in the trial court. (Ex. 12, Doc. 7-1, at 91-139).

On May 9, 2012, Petitioner filed in the Ohio Supreme Court a notice of appeal under case No. 2012-0806. In his memorandum in support of jurisdiction, Petitioner set forth the sole proposition of law:

> I. When a criminal defendant is acquitted of engaging in any predicate criminal conduct, the evidence is insufficient to sustain a conviction for participating in a criminal gang in violation of R.C. 2923.42(A).

On July 25, 2012, the Ohio Supreme Court denied leave to appeal and dismissed the case because it did not involve any substantial constitutional question. (Ex. 16, Doc. 7-1, at 212).

Petitioner filed in the Federal District Court for the Northern District of Ohio a petition for a writ of habeas corpus on March 15, 2013. Petitioner asserts one ground for relief in his petition:

> Ground One: A defendant has a constitutional right to a fair trial. Fifth and Fourteenth Amendments to the United States Constitution; *Tumey v. Ohio* (1927), 273 U.S. 510, 523, 47 S.Ct. 437, 71 L.Ed. 749. Before a state can obtain a conviction, it must prove beyond a reasonable doubt every element of the offense. *Sullivan v. Louisiana* (1993), 508 U.S. 275, 277-78, 113 S.Ct. 2078, 124 L.Ed. 2d 182; *Jackson v. Virginia* (1979), 443 U.S. 307, 316, 99 S.Ct. 2781, 61 L.Ed 2d 560; *In re Windship* (1970), 397 U.S. 358, 361-64, 90 s.ct.1068, 25 L.Ed. 2d 368. A conviction based upon insufficient evidence must be overturned. *Jackson* at 315-18. See, also, *State v .Thompkins* (1997), 78 Ohio St. 3d 380 1 387, 678 N.E. 2d 541; *State v. Robinson* (1955), 162 Ohio St.486, 124 N.E. 2d 148; *Tibbs v. Florida* (1982), 457 U.S. U.S. 31, 102 S.Ct.221, 72 L.Ed.652. The standard of review is whether, "after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson* at 319.

Petitioner also requested an evidentiary hearing and appointment of counsel in the Petition. (Docket #1.)

**Report and Recommendation**

On August 29, 2014, the Magistrate Judge issued his Report and Recommendation. (Docket # 12.) The Magistrate Judge recommends that the Court find Petitioner's claim lacks merit and his Petition be dismissed. Further, the Magistrate denied Petitioner's requests for an evidentiary hearing and appointment of counsel. No objections were filed to the Report and Recommendation.

**Standard of Review for a Magistrate Judge's Report and Recommendation**

The applicable standard of review for a magistrate judge's report and recommendation depends upon whether objections were made to that report. When objections are made to a report and recommendation of a magistrate judge, the district court reviews the case de novo.

FED. R. CIV. P. 72(b) states:

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

The text of Rule 72(b) addresses only review of reports to which objections have been made; it does not indicate the appropriate standard of review for those reports to which no objections have been properly made. The Advisory Committee on Civil Rules commented on a district court's review of *unopposed* reports by magistrate judges. In regard to subsection (b) of Rule 72, the advisory committee stated: "When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." FED. R. CIV. P. 72 advisory committee's notes (citation omitted).

The U.S. Supreme Court stated in *Thomas v. Arn*, 474 U.S. 140, 150 (1985): "It does not appear that Congress intended to require district court review of a magistrate judge's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings."

### Conclusion

This Court has carefully reviewed the Magistrate Judge's Report and Recommendation. After careful evaluation of the record, this Court adopts the findings of fact and conclusions of law of the Magistrate Judge as its own. The Report and Recommendation (Docket #12) is ADOPTED.

The Petititon for Writ of Habeas Corpus filed by Bohannon R. Miller pursuant to 28 U.S.C. § 2254 (Docket #1) is hereby DISMISSED.

## Certificate of Appealability

Pursuant to 28 U.S.C. § 2253, the Court must determine whether to grant a certificate of appealability as to any of the claims presented in the Petition. 28 U.S.C. § 2253 provides, in part, as follows:

> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from --
>
> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

In order to make "substantial showing" of the denial of a constitutional right, as required under 28 U.S.C. § 2255(c)(2), a habeas prisoner must demonstrate "that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issue presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4, 103 S. Ct. 3383, 77 L. Ed. 2d 1090 (1983).)

Where a district court has rejected the constitutional claims on the merits, the petitioner must demonstrate only that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack*, 529 U.S. at 484. Where the petition has been denied on a procedural ground without reaching the underlying constitutional claims, the court must find that the petitioner has demonstrated that reasonable jurists could debate whether the

petition states a valid claim of the denial of a constitutional right *and* that reasonable jurists could debate whether the district court was correct in its procedural ruling. *Id.* "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*

For the reasons stated in the Magistrate Judge's Report and Recommendation, a reasonable jurist could not conclude that dismissal of the Petition is in error or that Petitioner should be permitted to proceed further. Accordingly, the Court declines to issue a certificate of appealability.

IT IS SO ORDERED.

_____
DONALD C. NUGENT
United States District Judge

DATED: October 3, 2014